OPINION
This appeal is taken from a final judgment of the Geauga County Court of Common Pleas. Appellant, Eric Lindgren, appeals from the judgment rendered in favor of appellee, Ford Motor Credit Company, in an action for replevin and monetary damages pursuant to an automobile lease.
On February 10, 1994, appellant entered into a closed end lease agreement with a purchase option for the lease of a 1994 Ford Ranger pickup truck from a dealership known as Marshall Ford in Mayfield Heights, Cuyahoga County, Ohio. Pursuant to the lease, appellant made a down payment on the Ford Ranger and then agreed to pay twenty-four monthly installments of $275. In addition, appellant was obliged to pay a $275 refundable security deposit. Under the terms of the written instrument, Marshall Leasing Company was designated as the lessor, but the lease expressly stated that it would be assigned to Ford Motor Credit Company ("Ford Motor Credit"). In the process, Ford Motor Credit acquired title to the truck from Marshall Ford.
The lease on the Ford Ranger was set to expire on February 10, 1996. Around that time, appellant began to negotiate a new agreement for the lease of a Ford F150 truck from a different dealership known as Country Ford in Burton, Geauga County, Ohio. The particular F150 truck which appellant desired was on back order and, therefore, was not immediately available.
In light of this, appellant needed to extend the lease on the Ford Ranger so that he would have a vehicle to drive until the F150 truck arrived. Appellant consequently entered into a series of four extensions on the Ford Ranger lease totaling nine months. The extensions were authorized by Ford Motor Credit and were executed through Marshall Ford. Pursuant to these addendums to the original contract, appellant was permitted to continue leasing the Ford Ranger through November 10, 1996, by making $275 monthly payments to Ford Motor Credit while he awaited the shipment of the F150 truck.
As it turned out, the F150 truck did not arrive at Country Ford until early December 1996. By that time, appellant had kept the Ford Ranger beyond the final lease extension period.
Pursuant to the original lease on the Ford Ranger, appellant was required to return that truck to Marshall Ford or to such other place as Ford Motor Credit directed. Appellant, however, desired to return the Ford Ranger to Country Ford in light of the fact that he was negotiating with Country Ford over the new lease of the F150 truck. Ford Motor Credit and Marshall Ford both agreed to this arrangement.
On December 6, 1996, appellant drove the Ford Ranger to Country Ford, while his wife followed him in another vehicle. At the dealership, appellant left the truck and its keys and removed the license plates. A Country Ford agent took possession of the keys, executed a vehicle condition report, and filled out an odometer disclosure statement. Country Ford, however, was still in the process of preparing the F150 truck for delivery, so appellant agreed to return on December 7, 1996.
Starting with their initial negotiations in February 1996, appellant and Country Ford had apparently discussed the possibility that the dealership would accept the vehicle as a "trade-in," rather than simply as a "turn-in" of an automobile whose lease had expired. Under this scenario, Country Ford would agree to buy the Ford Ranger by paying the amount still due under the lease (i.e., the pay-off price stipulated in the final lease extension) to Ford Motor Credit.
As the lessee, appellant did not automatically accrue equity in the vehicle. Appellant was, in essence, merely renting the Ford Ranger for his use in exchange for making the monthly lease payment, although he retained the option to purchase the truck outright under the terms of the lease instrument. Appellant would realize the possibility of accumulated equity in the vehicle only if he chose to exercise the purchase option. Obviously, the amount of actual equity would ultimately depend on the condition of the Ford Ranger as reflected by its market value at the time appellant exercised his purchase option for the pre-established buyout price.
If Country Ford chose to accept the Ford Ranger from appellant on a trade-in basis, it would do so because the dealership saw the potential to sell the vehicle on its lot at a mark-up, thereby deriving a profit. Pursuant to such a scenario, Country Ford presumably would have been able to credit a portion of the expected profit to appellant by reducing the base price of the F150 truck which he was going to lease from the dealership.
When appellant returned to Country Ford on December 7, 1996 in order to lease the F150 truck, however, a Country Ford agent told appellant that the manager had changed his mind and no longer agreed to accept the Ford Ranger on trade. The Country Ford agent further informed appellant that he would have to make arrangements to either exercise his purchase option or return the vehicle to Marshall Ford.
Appellant was apparently confused by this turn of events. However, despite being notified that Country Ford would no longer accept the Ford Ranger, appellant nevertheless proceeded to execute the lease on the F150 truck at a monthly payment of approximately $410. After doing so, appellant drove home in the F150 truck, while representatives from Country Ford followed behind in the Ford Ranger which they ultimately left at appellant's residence.
Although he was fully aware that the original lease period and the subsequent extensions thereof had expired on the Ford Ranger, appellant chose to do nothing except store the truck on his property. By January 1997, a customer service representative from Ford Motor Credit contacted appellant by telephone in order to inquire as to the whereabouts of the Ford Ranger. Appellant acknowledged that he was still in possession of the vehicle. Over the next several months, appellant and Ford Motor Credit engaged in numerous telephone conversations during which the financing company demanded that he take the truck back to Marshall Ford. Appellant, however, steadfastly refused to comply on the ground that he had unsuccessfully attempted to return the vehicle to Country Ford on a trade-in basis during the negotiations surrounding his leasing of the F150 truck.
On May 21, 1997, Ford Motor Credit filed a replevin action in the trial court seeking the return of the Ford Ranger. Appellant answered and counterclaimed for damages for fraud and alleged violations of Ohio's Consumer Sales Practices Act. On September 3, 1998, Ford Motor Credit moved to amend its original complaint pursuant to Civ.R. 15, and the trial court granted the motion. In the amended complaint, Ford Motor Credit reasserted its right to the replevin of the Ford Ranger and added a second count seeking monetary damages for the amount due under the lease as compensation for appellant's continuing possession of the vehicle.
The matter was scheduled for trial on November 23, 1998. Only thirteen days prior to this, appellant filed a motion for leave to implead Country Ford as a third-party defendant under Civ.R. 14. The trial court denied the motion on the grounds that appellant's request to bring Country Ford into the action was tardily filed and because appellant had not specified how the dealership might be liable to him.
The case went to trial before the court on November 23, 1998. Ford Motor Credit called Carolyn Walker ("Walker") as its sole witness. Walker was one of the customer service representatives from Ford Motor Credit who had spoken with appellant on a number of occasions. She indicated that Ford Motor Credit had indeed given its approval for appellant to return the Ford Ranger to Country Ford, rather than Marshall Ford, because he was leasing another truck from Country Ford. When the trade-in deal fell through, Walker informed appellant in early 1997 that he needed to either turn the Ford Ranger back in or exercise his purchase option.
According to Walker, appellant indicated that he would not return the vehicle because he was angry at Country Ford for reneging on its promise to accept the Ford Ranger on a trade-in basis. Walker testified that appellant expressed the intention to retain the Ford Ranger as leverage until Country Ford agreed to rework his lease on the F150 truck such that he would be given credit for some equity in the Ford Ranger, thereby lowering his $410 lease payment on the F150 truck.
During his testimony at trial, appellant admitted that he still was in possession of the Ford Ranger. Appellant stated that he never returned the vehicle to Marshall Ford because its license plates and registration had expired, and he did not want to drive the truck in violation of the law. On cross-examination, however, it was revealed that the Ford Ranger license plates remained valid until February 1997, thereby affording appellant several months to return the truck to Marshall Ford after Country Ford had declined to accept it on trade in December 1996. Appellant also conceded that he had driven the Ford Ranger to a storage facility in December 1997 despite the fact that its registration had expired by that time and it was no longer equipped with license plates.
In his defense, appellant opined that Country Ford had falsely represented that it would accept the Ford Ranger as a trade-in and that he felt coerced into leasing the F150 truck for $410 per month after the dealership informed him that it no longer wanted to accept the truck on trade. Appellant also indicated that although he made no effort to return the Ford Ranger after Ford Motor Credit initiated the replevin action in July 1997, the financing company could have sent someone to his residence in order to retrieve the vehicle.
The parties introduced several documents into evidence during the course of the trial. These included the original lease, the lease extensions, and the vehicle condition report and odometer disclosure statement that the Country Ford agent filled out on December 6, 1996.
At the close of the evidence, the trial court ruled from the bench that Ford Motor Credit was entitled to the replevin of the Ford Ranger, and arrangements were made for the immediate return of the vehicle. Thereafter, on January 5, 1999, the trial court issued a judgment entry encompassing its findings of fact and conclusions of law. In the entry, the trial court found that the lease had expired on the Ford Ranger in November 1996. The trial court further found that appellant did not leave the Ford Ranger with Country Ford on December 6, 1996 under the belief that he was merely turning in the leased vehicle, but rather with the understanding that the dealership would accept the truck on a trade-in basis. In the trial court's estimation, whether or not Country Ford subsequently reneged on the deal the next day had no bearing on appellant's obligation to ensure that the vehicle was returned to Ford Motor Credit. Appellant then retained possession of the Ford Ranger as a negotiating tool in an effort to obtain a more favorable lease arrangement from Country Ford in relation to the F150 truck.
Based on its findings, the trial court concluded that appellant was contractually obligated under the terms of the lease to continue making the $275 monthly payment during the twenty-four month period that he continued to possess the Ford Ranger from November 1996 through November 1998. After crediting appellant with his $275 security deposit, the trial court ordered him to pay Ford Motor Credit twenty-three installments of $275, or a total of $6,325, plus interest.
From this judgment, appellant filed a timely notice of appeal with this court. He now asserts the following assignments of error:
 "[1.] The trial court erred as a matter of law in concluding that Defendant had failed to satisfy the terms and conditions of the lease agreement and terminated any further obligation pursuant to contract.
 "[2.] The trial court's findings that Appellant had failed to satisfy the conditions of the lease agreement entered into by and between the parties is against the manifest weight of the evidence.
 "[3.] The trial court erred as a matter of law in awarding financial damages to Plaintiff as well as in the measure of damages awarded."
In his first assignment of error, appellant maintains that the trial court erred in concluding that he did not satisfy the terms and conditions of the lease. Specifically, appellant argues that he did everything required to terminate the lease, thereby absolving him from any further obligation under the contract.
The lease described the manner in which it was to terminate as follows:
 "(20) Termination: This lease shall terminate upon (i) the end of the term of this Lease, (ii) the return of the Vehicle to the Lessor and (iii) the payment by the Lessee of all amounts owed under this Lease. The Lessor may cancel this Lease if the Lessee defaults under this Lease."
According to appellant, he satisfied all three criteria for the termination of the lease. The trial court, however, concluded that appellant had not taken the necessary steps to meet the second criterion, to wit: return of the Ford Ranger to the lessor. Upon review, we agree with the trial court's judgment in this regard.
As an initial matter, we would note that the first criterion was certainly satisfied. The evidence demonstrated that the final lease extension period actually ended on November 10, 1996. Thus, when appellant attempted to trade the Ford Ranger in at Country Ford on December 6, 1996, the lease term had already expired. With regard to the third criterion, the evidence showed that appellant still owed $275 because he kept the truck for an additional month after the lease term had expired. Although appellant did not contemporaneously pay this sum to Ford Motor Credit, the financing company could have kept his $275 security deposit as satisfaction for the debt.
Appellant takes the position that he also satisfied the second criterion by returning the Ford Ranger in the manner prescribed by the lease. In this regard, the lease provided as follows:
 "(19) Return of the Vehicle: At the end of this Lease, the Lessee will return the Vehicle to the Lessor's address shown on the reverse side or to such other place as Ford Credit may direct. If the Lessee keeps possession of the Vehicle past the end of the Lease term, the Lessee shall continue to pay the monthly lease payments * * *."
Pursuant to this provision, appellant was obligated to return the Ford Ranger to the original lessor dealership, Marshall Ford, unless Ford Motor Credit directed him to return it elsewhere. It was undisputed that appellant sought to return the truck to Country Ford, instead of Marshall Ford. Appellant did so because of his desire to attempt to negotiate a new lease with Country Ford for the F150 truck which would include the Ford Ranger as a trade-in. Under the lease, appellant needed Ford Motor Credit's authorization for this arrangement. The evidence demonstrated that the financing company did grant appellant permission to return the truck to Country Ford and that Marshall Ford also consented to this arrangement.
From appellant's perspective, he fulfilled his obligation under the contract by tendering delivery of the Ford Ranger to Country Ford on December 6, 1996. In his mind, termination of the lease was achieved upon Country Ford's acceptance of the truck as evidenced by the fact that the dealership completed a vehicle condition report and odometer disclosure statement.
It was uncontroverted that Country Ford did initially accept delivery of the vehicle as described on December 6, 1996. The crucial point to be made, however, is that appellant was not simply returning the Ford Ranger on a turn-in basis (i.e., the return of a leased vehicle when its lease term has expired). Instead, appellant was dropping the truck off at Country Ford with the belief that it would be accepted by the dealership as a trade-in toward his lease of the F150 truck.
However, when appellant returned on December 7, 1996 in order to negotiate the final terms of the F150 truck lease, the sales representative at Country Ford told him in no uncertain terms that the manager had refused to accept the Ford Ranger on trade. The evidence did not demonstrate why the manager nixed the deal. What is important is that appellant was on unequivocal notice as of December 7, 1996 that Country Ford was not accepting final delivery of the Ford Ranger as a trade-in. Appellant knew, prior to finalizing his lease on the F150 truck, that Country Ford had rejected the Ford Ranger on a trade-in basis. Indeed, Country Ford employees returned the Ford Ranger to appellant's residence immediately after appellant had driven home in his newly leased F150 truck.
At that point, appellant had two options: (1) he could turn the Ford Ranger back in at Marshall Ford or some other location that was agreeable to Ford Motor Credit; or (2) he could make arrangements with Ford Motor Credit to pay the balance due on the truck, thereby exercising his purchase option to acquire legal title. Appellant did neither. Instead of taking affirmative steps to ensure that the Ford Ranger was returned as required under the express terms of the lease, appellant simply stored the vehicle on his property. Appellant did so based on his belief that Ford Motor Credit and Country Ford had some type of agency relationship such that the financing company was responsible for the dealership's actions.
The evidence showed that Ford Motor Credit contacted appellant on numerous occasions by telephone as early as January 1997 inquiring as to his intentions with respect to the Ford Ranger. Appellant clearly understood that the financing company wanted the truck back, but he did not take any action to ensure its return. By the summer of 1997, appellant was served with notice that Ford Motor Credit had instituted legal proceedings against him to regain possession of the Ford Ranger. Despite this, appellant still did nothing. Moreover, there was credible evidence introduced at trial to suggest that appellant initially told customer service representatives at Ford Motor Credit that he wanted to retain the Ford Ranger as bargaining chip in his attempt to renegotiate his lease with Country Ford on the F150 truck on terms that were more agreeable to him.
In light of the evidence adduced at trial, we agree that appellant failed to terminate the lease as provided for by the contract. Appellant did not return the Ford Ranger until he was ordered to do so by the trial court in November 1998. The trial court did not err in this regard. The first assignment is not well-founded.
In his second assignment of error, appellant posits that the judgment of the trial court was against the manifest weight of the evidence. Appellant specifically argues that the trial court's conclusion that he failed to return the Ford Ranger in the manner provided for by the lease was counter to the evidence.
"On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. In the instant matter, the trial court was the fact finder because the case was tried to the bench.
Whether a judgment in a civil trial is against the weight of the evidence is a factual issue. As a result, a reviewing court must simply determine whether there was competent, credible evidence to support the judgment. C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, syllabus. See, also, Buckv. Canacci (Nov. 21, 1997), Lake App. No. 96-L-185, unreported, at 2, 1997 WL 752632. Thus, "[i]t is well-settled that a civil judgment will not be reversed upon review as being against the manifest weight of the evidence if such judgment is supported by some competent, credible evidence." Foreman v. Hsu (Sept. 30, 1998), Trumbull App. No. 96-T-5559, unreported, at 5, 1998 WL 683941.
We need not restate the factual predicate of this case in detail. Suffice it to say, the testimony and documentary exhibits introduced at trial buttressed the trial court's judgment to the effect that appellant did not return the Ford Ranger as provided for by the terms of the lease.
The written instrument stated: "At the end of this Lease, the Lessee will return the vehicle to the Lessor's address shown on the reverse side [i.e., Marshall Ford] or to such other place as Ford Credit may direct." The trial court concluded that appellant's attempt to return the Ford Ranger to Country Ford on a trade-in basis was substantively different than merely turning in a leased vehicle at the conclusion of the lease period. The trial court further concluded that after appellant's trade-in deal with Country Ford collapsed, he had a contractual duty to return the truck to Marshall Ford or, alternatively, to exercise his purchase option by paying off the balance due to Ford Motor Credit. Because appellant failed to take either course of action, the trial court adjudged that he had not satisfied the requirements for a successful termination of the lease. In doing so, the trial court rejected the agency argument by determining that Country Ford's actions in refusing to accept the Ford Ranger on trade did not serve to negate appellant's duty to return the truck to Ford Motor Credit.
Upon review, we conclude that there was competent, credible evidence to support the trial court's judgment. The second assignment is without merit.
In his third assignment of error, appellant contends that the trial court erred in awarding damages to Ford Motor Credit. Appellant asserts that the trial court erred because: (1) Ford Motor Credit was not entitled to any monetary judgment; and (2) even assuming that Ford Motor Credit was entitled to damages, the trial court's award was excessive.
As for the former, appellant suggests that Ford Motor Credit did not offer any evidence with respect to damages sustained. This is simply incorrect. The uncontroverted evidence demonstrated that appellant retained the Ford Ranger from November 1996 until November 1998 following the expiration of the lease period. During this twenty-four month interval, appellant paid absolutely no money to Ford Motor Credit, despite the fact that he still had possession of the truck.
Clause (19) of the lease provided that "[i]f the Lessee keeps possession of the Vehicle past the end of the Lease term, the Lessee shall continue to pay the monthly lease payments * * *." This provision was triggered by the fact that appellant kept possession of the vehicle past the November 10, 1996 expiration date of the final lease extension period. Thus, Ford Motor Credit most assuredly established that it was entitled to monetary damages under the contract.
Appellant also contends that the award of damages was excessive. In this regard, appellant characterizes clause (19) as a liquidated damages provision. After doing so, appellant maintains that the trial court applied clause (19) without any inquiry as to whether the amount of damages provided for was reasonable or whether such amount was void as a penalty.
A liquidated damages clause is a provision in a contract by which the parties to a contract stipulate a specific amount of damages to be recovered by either party for a breach of the contract perpetuated by the other party. The purpose of a liquidated damages provision is to fix the amount to be paid in lieu of performance of the contract. Damages for breach of the contract may be liquidated in the written instrument, but the amount of such damages must be reasonable in light of the harm anticipated by virtue of the breach. It is well-settled that a clause establishing an unreasonably large sum of liquidated damages is void as a penalty.
In the case sub judice, appellant's characterization of clause (19) as a liquidated damages provision is inaccurate. It did not affix a sum certain to be paid by the breaching party to the nonbreaching party. Rather, it simply stated that if appellant kept possession of the Ford Ranger past the end of the lease term, then he had to continue paying the $275 monthly lease payment. In this regard, clause (19) was akin to a provision in a residential lease stating that the tenant is responsible for continued rental payments if he or she holds over past the end of the tenancy period as stipulated in the lease.
As it turned out, that is essentially what transpired in this case. Appellant kept the Ford Ranger for twenty-four months following the expiration of the lease term. The trial court ordered appellant to pay $6,325 to Ford Motor Credit. This represented the amount due under the lease for possessing the Ford Ranger for twenty-four additional months, less the $275 security deposit that appellant had paid in 1994 when he originally signed the lease.
The monetary judgment awarded to Ford Motor Credit was in accordance with the express language of the lease. The third assignment is not well-taken.
Based on the foregoing analysis, the assignments of error lack merit. Accordingly, the judgment of the trial court is affirmed.
 ________________________________________ PRESIDING JUDGE JUDITH A. CHRISTLEY
O'NEILL, J., MILLIGAN, J., Ret., Fifth Appellate District, sitting by assignment, concur.